UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRIANNA HAMMER,

      Plaintiff,

v.                                      Case No.:   2:18-cv-347-FtM-29MRM

LEE MEMORIAL HEALTH SYSTEM and
JEOVANNI HECHAVARRIA,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court are Plaintiff's Motion for Leave of Court to Supplement and Amend Third Amended Complaint, filed on July 18, 2019, (Doc. 54), and Defendant Lee Health's Response to Plaintiff's Motion to Amend the Complaint, filed on August 1, 2019, (Doc. 55).  These matters are fully briefed and ripe of the Court's consideration.

In short, Plaintiff seeks leave to file a Fourth Amended Complaint because:

> Plaintiff now wishes to amend the Complaint solely for the purpose of detailing additional facts which [sic] have been uncovered during the discovery phase of this case.  Specifically, the Plaintiff wishes to include in Count I (Claim against Lee Memorial Health System Violation of 42 U.S.C.A. § 1983) the fact that within the five (5) years prior to the Plaintiff's sexual assault, other patients were sexually assaulted by the Defendant's employees and no action was taken to prevent future sexual assaults, the sexual assaults were not fully investigated, and [sic] the Defendant failed to adequately train and/or supervise it employees to prevent future sexual assaults, and the prior failures to properly train, supervise, and respond to sexual assaults perpetrated by the Defendant's employees were a deliberate indifference to the rights and safety of female patients.
>
> * * *
>
> The Plaintiff would also like to amend Count IV (Negligent Security) to include the uncovered facts the sexual assault against the Plaintiff was foreseeable because in the five (5) years prior to

> March 2015, there were numerous sexual assault [sic] which [sic] were perpetrated by the Defendant's employees and that that the Defendant failed to take appropriate actions after prior sexual assault [sic] to prevent future assaults on patients.

(Doc. 54 at 2-3).  Plaintiff attaches a copy of the proposed Fourth Amended Complaint as Exhibit A to the motion *sub judice*.  (*See* Doc. 54-1).

Lee Health opposes any amendment, arguing that the proposed pleading amendment is untimely, that Plaintiff fails to address the proper legal standards under Fed. R. Civ. P. 15 and 16, and that the proposed amendment would "vastly broaden the scope of [Plaintiff's] § 1983 and negligent supervision claims against Defendant."  (Doc. 55 at 1-2).

For the reasons below, the Undersigned respectfully recommends that Plaintiff's Motion for Leave of Court to Supplement and Amend Third Amended Complaint (Doc. 54) be **DENIED**.

## BACKGROUND

A brief review of the relevant procedural history of this case is instructive.  Plaintiff initiated this action in Florida state court on or about April 12, 2018.  (Doc. 1 at 1; Doc. 1-1 at ECF pp. 19-32).  Plaintiff amended the state-court complaint on April 17, 2018 and again on April 24, 2018.  (Doc. 1 at 1; Doc. 1-1; Doc. 2).  Defendant removed this action to this Court on or about May 17, 2018.  (Doc. 1).  At the time of removal, Plaintiff's Second Amended Complaint was the operative pleading.  (*See* Doc. 2).

On August 3, 2018, the presiding United States District Judge entered an Opinion and Order granting Defendant Lee Memorial Health System's partial motion to dismiss as to certain counts of the Second Amended Complaint.  (*See* Doc. 24 at 11).  The District Judge's Opinion and Order required Plaintiff to file an amended complaint.  (*Id.* at 12).  On August 25, 2018,

Plaintiff filed the Third Amended Complaint, which has remained the operative pleading in this case since its filing nearly a year ago.  (Doc. 25).

Defendant Lee Memorial Health System filed its Answer and Affirmative Defenses on November 7, 2018.  (Doc. 32).  In the meantime, the Court entered a Case Management and Scheduling Order on August 17, 2018.  (Doc. 26).  The Case Management and Scheduling Order adopted the parties' stipulated deadline of October 15, 2018 for filing motions to add parties or to amend the pleadings.  (*See* Doc. 23 at 1; Doc. 26 at 1).  No party ever sought to modify or to extend that deadline after it was set by the Court.

Other deadlines were, however, modified or extended over the course of this case after the October 15 deadline lapsed.  In response to a joint motion by the parties, the Court entered an Amended Case Management and Scheduling Order on February 25, 2019 that reset all deadlines relating to discovery, the dispositive motion deadline, the date of the final pretrial conference, and the date of the trial term.  (Doc. 35).  The Court again subsequently modified certain discovery-related deadlines on unopposed motions filed by either Plaintiff or Defendant.  (*See* Docs. 42-43, 48-49).  The net effect of these various scheduling orders is that:  (1) the parties stipulated to an October 15, 2018 deadline to file motions to add parties or to amend pleadings (Doc. 23 at 1) that the Court adopted (Doc. 26 at 1) and never extended; (2) expert discovery has now concluded (*see* Doc. 49); and (3) the discovery deadline is currently set to expire on September 3, 2019 and the parties' dispositive motions and any *Daubert* motions are due by October 3, 2019 (Doc. 35 at 1).

Plaintiff filed the instant motion on July 18, 2019 (Doc. 54), which is approximately *9 months* after the October 15, 2018 deadline specified in the original Case Management and Scheduling Order for filing motions to amend pleadings expired (*see* Doc. 26 at 1).

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that after a responsive pleading is served, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he Court should freely give leave when justice so requires."  The decision whether to permit an amendment is within the Court's sound discretion.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

However, "[w]hen a party files a motion for leave to amend a pleading *after* the applicable scheduling order deadline has passed, the party is in effect seeking to modify this deadline."  *Coach Inc. v. Visitors Flea Mkt., LLC*, 6:11-cv-1905-Orl-19GJK, 2012 WL 12905809, at *1 (M.D. Fla. June 11, 2012) (emphasis added; citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)).  Thus, an untimely motion for leave to amend a pleading requires an analysis of the good cause and excusable neglect standards in Fed. Rs. Civ. P. 6(b)(1)(B) and 16(b)(4).  *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235, 1252 (M.D. Fla. 2009) ("[W]hen a party files a motion for leave to amend a pleading after the relevant scheduling order deadline has passed, the party must demonstrate both good cause and excusable neglect for the untimely motion." (citing Fed. Rs. Civ. P. 6(b)(1)(B), 16(b)(4))).  Only then does the court consider whether amendment is proper under Fed. R. Civ. P. 15(a).  *Sosa*, 133 F.3d at 1419.

The "good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'"  *Id.* at 1418.  Furthermore, with regard

to excusable neglect, this Court has recognized that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Estate of Washington v. Carter's Retail, Inc.*, 3:10-CV-1136-J-32TEM, 2011 WL 2731291, at *2 (M.D. Fla. July 13, 2011) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). Determining whether a party has established excusable neglect "is at bottom an equitable one." *Pioneer Inv. Servs. Co.*, 507 U.S. at 395. The Supreme Court has identified four factors courts should consider: "(1) the danger of prejudice to the other party; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Estate of Washington*, 2011 WL 2731291, at *3 (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 395).

The Undersigned analyzes the parties' respective positions under this general framework. Notably, however, Plaintiff's motion only addresses the standard applicable under Fed. R. Civ. P. 15, but does not address Fed. Rs. Civ. P. 6(b)(1)(B) or 16(b)(4). (Doc. 54 at 5-6). Thus, the Undersigned addresses the arguments Plaintiff has made to the extent possible under the correct legal standards below.

## ANALYSIS

### A.    Danger of Prejudice to Defendant

Plaintiff argues that the proposed amendments do not add new claims and "Defendant will not be prejudiced by the amendment to the Complaint because there is plenty of time prior to the dispositive motion deadline and trial is not scheduled to commence for an additional eight (8) months." (Doc. 54 at 4-5). Plaintiff amplifies this argument by averring that the new factual

allegations Plaintiff wishes to add to the complaint are essentially the same as the prior pleadings and "because we are still in the discovery phase of the case and dispositive motions have not be [sic] filed, the Defendant will not be prejudiced.  In fact there is no need to conduct any additional discovery on this matter and the Defendant has already retained experts to address these factual assertions."  (*Id.* at 7).  Plaintiff also argues that Defendant "cannot be surprised by these new factual allegations as they have been the subject of deposition testimony and expert reports."  (*Id.* at 4).

In response, Defendant argues that "[t]he proposed amendments in fact broaden the § 1983 claim against Defendant Lee Health considerably."  (Doc. 55 at 2).  Defendant explains that the current complaint merely alleges Defendant had a policy of failing to supervise the named individual defendant in this case, Jeovanni Hechavarria, (*id.* (citing Doc. 25 at ¶ 36)), whereas the proposed Fourth Amended complaint would "vastly expand the scope" of the existing claims to include "(1) training, (2) educating, and (3) supervising *all* of [Defendant's] employees," (*id.* (original emphasis; citing Doc. 54 at Ex. 1 ¶¶ 40, 43)).  Defendant contends that the new allegations expand both the existing negligent supervision claim and the negligent security claim.  (*Id.*).

At base, Defendant complains that "over one year into this litigation and right in the midst of several important deadlines passing and coming up, [Plaintiff] is seeking to enormously broaden this lawsuit."  (*Id.* at 3).  "Rather than facing a claim that it engaged in one wrongful policy with respect to one person (supervising Hechavarria), [Plaintiff] now seeks to force Defendant Lee Health to face a claim that it engaged in three wrongful policies (training, educating, and supervising) with respect to all of its thousands of employees."  (*Id.* at 8).  "This sudden shift in focus comes after more than a year of litigating, during which time Defendant

Lee Health has based all its strategies on the claims as actually alleged by [Plaintiff]." (*Id.*).

Driving this point home, Defendant argues forcefully:

> More harmful to Hammer's cause is that she has previously been made aware of Defendant Lee Health's position that this litigation is limited to questions surrounding only the supervision of Hechavarria. For example, in response to one of Hammer's requests for production seeking information about Defendant Lee Health's policies regarding the investigation, discipline, supervision, and retention of any employees accused of sexual assault, Defendant Lee Health objected by noting that the scope of the request was overbroad and that Hechavarria had never faced any prior accusations. Exhibit A, at 2.
>
> The most prejudicial aspect of Hammer's delays, however, is that Defendant Lee Health's experts did not in fact have the opportunity to consider these new allegations or any potential evidence relating to them. Hammer's motion blithely states that Defendant Lee Health "has already retained experts," but its experts solely considered evidence regarding the alleged failures to supervise Hechavarria; they did not consider these previously unknown allegations that Defendant Lee Health failed to train, educate, or supervise *any and all* of its employees. Defendant Lee Health's expert disclosure deadline was July 1, 2019. Docket 35, at 1. Even accepting all the allegations regarding Hammer's knowledge of the underlying facts as true . . . she *certainly* was aware of everything by [Defendant's] July 1, [2019 expert disclosure] deadline. But rather than disclosing to Defendant Lee Health her intent to amend the complaint to broaden her claims, she chose to let Defendant Lee Health produce its expert reports before raising these new theories.

(*Id.* at 9).

The Undersigned is persuaded by Defendant's arguments. It appears that allowing Plaintiff to amend her Complaint again at this fairly late stage of the proceedings would significantly prejudice Defendant by forcing Defendant to revisit its expert disclosures and discovery, to generate new expert reports, and to conduct more expert depositions. In short, allowing Plaintiff to file and proceed on the expanded allegations in the Fourth Amended Complaint would throw open the doors of expert discovery when the deadlines governing expert

discovery – which were set long ago and modified multiple times already – have now lapsed. Moreover, extending those deadlines to allow additional time to supplement expert discovery would not cure the prejudice to Defendant, but would exacerbate it because Defendant would be forced to go back to the drawing board with its experts to respond to Plaintiffs' newly expanded theories and factual allegations, which implicate Defendant's entire employee base rather than a single employee.  The obvious delay, substantial additional work, and inevitable expense associated with Plaintiff's nearly last-minute pivot on her factual allegations and legal claims in this case is highly prejudicial to the Defendant.  For the reasons argued by the Defendant, therefore, the Undersigned finds that this factor weighs very heavily against allowing Plaintiff to amend her pleading.

**B.      Length of Delay and Its Impact on the Judicial Proceedings**

As explained above, Plaintiff takes the position that the requested amendment to her pleading would not impact these judicial proceedings or the existing case-management deadlines because, according to her, there is no need to conduct any additional discovery regarding the new factual allegations and Defendant already has the experts it needs.  (*See* Doc. 54 at 7).  Plaintiff also argues that at the time the Court established the October 15, 2018 deadline for amending pleadings in the Case Management and Scheduling Order "no meaningful discovery in the case had occurred – in fact, no depositions had occurred."  (*Id.* at 4).  Plaintiff also argues that "the Court was in the mist [sic] of ruling on a Motion to Dismiss and the Court's Order on that Motion to Dismiss occurred after the initial deadline."  (*Id.*).  Plaintiff insists that "[c]learly, the original cut-off date for amending the Complaint was prior to any meaningful discovery" and "[t]he original deadline could not have been met considering the discovery stage of the case." (*Id.*).

Also, as explained above, Defendant vehemently disagrees and accuses Plaintiff of downplaying the effect of the proposed amendment on the case in its current posture, particularly the impact on expert discovery.  (*See* Doc. 55 at 2-3, 7-9).

The Undersigned finds that the relevant delay here is the approximate *9 month period* between the October 15, 2018 deadline for amending pleadings as established in the original Case Management and Scheduling Order (*see* Doc. 26 at 1) and the July 18, 2019 filing date of Plaintiff's motion seeking leave to amend (*see* Doc. 54).  The Undersigned finds that this delay is substantial and also weighs heavily against permitting the requested amendment.  In reaching this conclusion, the Undersigned also expressly rejects Plaintiff's complaints concerning the impracticability of the October 15 deadline for amending the pleadings because *Plaintiff expressly stipulated to that deadline in the joint Case Management Report the parties filed with the Court on July 30, 2018 (see Doc. 23 at 1) and the Court adopted that stipulated deadline as proposed (see Doc. 26 at 1).*  Moreover, despite repeated motions to modify or extend certain deadlines (*see, e.g.*, Docs. 33, 42), Plaintiff never asked the Court to extend the pleading amendment deadline even after discovery had begun in earnest.  Plaintiff cannot now complain that the deadline was unworkable at the time her counsel stipulated to it.

For these reasons, the Undersigned finds that 9-month length of the delay and its impact on these judicial proceedings weighs heavily against permitting the proposed amendment.

### C.      Reason for the Delay and Plaintiff's Diligence

Plaintiff explains the reason for the delay and her diligence in the discovery process as follows:

> The Plaintiff has recently taken the deposition of certain security managers within the Defendant's hospital system.  They have testified that after the previous sexual assaults in the five (5) years before Brianna Hammer's assault, the security department never

took any proactive measures to prevent future sexual assaults. Furthermore, the testimony from the Defendant's employees is that prevention of sexual assaults was never discussed or addressed at any of the security meetings in the five (5) years preceding Brianna Hammer's assault. As the Defendant's employees testified, no actions were taken after each of the preceding sexual assaults to prevent future assaults. Likewise, there has been recent testimony that the nurses and staff members of the hospital system never received any education or training to prevent future sexual assaults after the numerous sexual assault which occurred before Brianna Hammer's assault. Specifically, the deposition of Cape Coral Hospital Security Manager Steve Lucas occurred on May 29, 2019 and the hospital system security director David LaRose occurred on April 24, 2019. The deposition of Marian Windey, who testified regarding the training and education of nurses at Cape Coral Hospital took place on May 29, 2019. The testimony of these individuals was not available at the time the Plaintiff filed her lawsuit or by the time the original deadline was set for amending the pleadings. Likewise, the production of past sexual assault investigative documents was formerly responded to by the Defendant on February 22, 2019. After the formal production of those records, Plaintiff provided the documents (over 1,000 pages) to her expert witnesses for their review. The experts concluded that the Defendant was deliberately indifferent to the rights and safety of patients and that the sexual assault perpetrated by Hechavarria was reasonably foreseeable.

. . . The Plaintiff has retained a security expert, Michael D'Angelo, who has reviewed the deposition testimony, as well as the records from the prior sexual assaults, and it is his opinion that the sexual assault of Brianna Hammer was reasonably foreseeable due to the numerous prior sexual assaults perpetrated by hospital staff. Michael D'Angelo's expert opinions were not finalized until June 1, 2019. Furthermore, hospital administration expert Dr. Fred Hyde, recently finalized his opinions in this case which includes the opinion that Lee Memorial was deliberately indifferent to the rights and safety of female patients by not taking appropriate actions to prevent future sexual assaults in light of the history of numerous assaults being perpetrated by hospital employees. These opinions are predicated on the history of numerous sexual assaults perpetrated by Lee Memorial employees. Dr. Hyde's report was also not finalized until May 22, 2019. Lee Memorial cannot be surprised by these new factual allegations as they have been the subject of deposition testimony and expert reports.

(Doc. 54 at 2-4 (footnotes omitted)).

In response, Defendant claims Plaintiff "was aware of all the supposedly relevant facts before the October 15 amendment deadline," thereby implying that Plaintiff's stated reasons for seeking the amendment are not genuine and that this belated attempt to amend the complaint constitutes procedural gamesmanship.  (*See* Doc. 55 at 3-4).

The Undersigned has carefully examined Plaintiff's stated reasons for the delay and finds them unpersuasive and self-defeating.  A careful examination of Plaintiff's proffered reasons reveals that Plaintiff's counsel was aware of the need to amend her pleading as early as in or around February 22, 2019 when "the production of past sexual assault investigative documents was formerly responded to by the Defendant on February 22, 2019," pointing Plaintiff's counsel to "records that were previously produced in the *Goines v. Lee Memorial Health System, et al[.]* case, Case No. 2:14-cv-65-FtM-29CM."  (Doc. 54 at 3 and n.1).  At the very least, Plaintiff's proffered reasons reveal that Plaintiff's counsel was alerted to the need to amend the complaint no later than April or May 2019 when certain fact witnesses were deposed.  (*Id.*at 2-4).  The instant motion seeking leave to amend the complaint was not filed until July 18, 2019 (*see* Doc. 54), which is nearly 5 months from the date Plaintiff's counsel was directed to the documents produced in *Goines* and 2-3 months from when the key fact witnesses were deposed.  Either way, the existence of this substantial period of delay of between 2-5 months persuades the Undersigned that Plaintiff's counsel had ample reason and opportunity before July 18, 2019 to seek leave to amend Plaintiff's complaint to include the additional facts Plaintiff now seeks to add, but did not proceed diligently to do so.

Based upon the foregoing, the Undersigned finds that the Plaintiff's proffered reasons for her delay in seeking to amend her complaint weigh heavily against allowing the proposed amendment.

### D.        Whether Plaintiff Acted in Good Faith

Under the facts of this case, the Undersigned cannot conclude that Plaintiff has acted in good faith by seeking leave to amend her complaint at this stage of the litigation *after* the parties have completed their expert disclosures and with only a month and half left before the close of all discovery.  The Undersigned agrees with Defendant that the timing of Plaintiff's motion is suspect and strongly suggestive of gamesmanship.  Accordingly, the Undersigned finds that the absence of good faith on Plaintiff's part weighs against allowing the proposed amendment.

Because all of the factors considered in Parts A-D above weigh against allowing the proposed amendment, the Undersigned finds that Plaintiff has not met her burden to show good cause or excusable neglect.

### E.        Fed. R. Civ. P. 15(a)

Because Plaintiffs have not adequately demonstrated either good cause or excusable neglect under Fed. Rs. Civ. P. 6(b)(1)(B) and 16(b)(4), the Court need not consider whether Plaintiffs satisfy Fed. R. Civ. P. 15(a).  *See Sosa*, 133 F.3d at 1419.

### CONCLUSION

For these reasons, the Undersigned finds that Plaintiff has not adequately demonstrated good cause or excusable neglect to warrant the untimely filing of a Fourth Amended Complaint.  Accordingly, the Undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Leave of Court to Supplement and Amend Third Amended Complaint (Doc. 54) be **DENIED**.

Respectfully recommended in Chambers in Ft. Myers, Florida on August 5, 2019.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties