UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRIANNA HAMMER,                                          CASE NO: 2:18-cv-347-FtM-29MRM

    Plaintiff,

v.

LEE MEMORIAL HEALTH SYSTEM
d/b/a CAPE CORAL HOSPITAL, and
JEOVANNI HECHAVARRIA, R.N.,

    Defendants.
_____/

## PLAINTIFF'S MOTION FOR REHEARING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 54(b), Plaintiff Brianna Hammer respectfully moves the Court for reconsideration of the Memorandum and Order (Dkt. 127) granting Defendant Lee Memorial Health System's Motion for Summary Judgment (Dkt. 70) on Count I (§ 1983), Count III (negligent hiring), and Count IV (negligent security) of Plaintiff's Third Amended Complaint. Plaintiff believes that the Court committed clear errors requiring correction:

- **Count I:** Lee Health's custom or policy of failing to adequately address nurse-on-patient sexual assaults was the moving force behind Hechavarria's sexual assault of Plaintiff. Lee Health's inexplicable inaction created a culture of impunity that made the sexual assault reasonably probable. And because Lee Health had ample notice that it could not rely on the common sense of its male nurses, it cannot claim that sexual assault is so obviously wrong that its custom or policy could not have caused this assault.

- **Count III:** Under Florida law, sovereign immunity does not immunize a sovereign entity for its policies for hiring a low-level nurse, allowing liability only for negligent implementation of policies. Rather, such policies are part of the actual hiring of a nurse,

which is an operational function enjoying no immunity. Alternatively, Plaintiff presented sufficient evidence that Lee Health negligently failed to follow its own hiring policies when it hired Jeovanni Hechavarria as a nurse, and it failed to follow the policies mandated by the regulatory agency controlling its actions.

- **Count IV:** Earlier in this case, the Court granted Lee Health's motion to dismiss Count V, which was for Lee Health's negligent failure to protect Plaintiff against criminal acts of third persons that, because of the existence of prior similar incidents, were reasonably foreseeable. The Court concluded that Count V was duplicative of Count IV for negligent security, in which Plaintiff alleged Lee Health knew or should have known of Hechavarria's dangerous propensity. Yet the Court granted summary judgment on Count IV because Plaintiff did not present evidence on Hechavarria specifically, even though, in reliance on the earlier order, Plaintiff presented significant evidence of prior similar incidents. Also, the Court had already expressed its belief that the sexual assault of Hechavarria was reasonably foreseeable for purposes of the aforementioned Motion to Dismiss.

For these reasons, explained in detail below, Plaintiff respectfully asks the Court to grant reconsideration of the order granting summary judgment.

I. **STANDARD FOR RECONSIDERATION**

The Middle District has articulated the following standard for reconsideration:

[P]ursuant to Federal Rule of Civil Procedure 54(b), "[a] district court may reconsider and amend interlocutory orders at any time before final judgment." ...

Rule 54(b) does not specify the standard to be used by courts in exercising authority to reconsider. However, in this Circuit, courts have taken the position that a motion for reconsideration should only be granted if there is (1) an intervening change in controlling law, (2) newly discovered evidence; or (3) the need to correct clear error or prevent manifest injustice. Additionally, a motion for reconsideration should not "be used as a vehicle to present authorities available at the time of the

2

first decision or to reiterate arguments previously made." Instead, the moving party "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision," for "[r]econsideration of a previous order is an extraordinary remedy to be employed sparingly."

*Voter Verified, Inc. v. Premier Election Sols., Inc.*, No. 6:09-CV-1968-ORL-19, 2011 WL 3841580, at **2-3 (M.D. Fla. Aug. 30, 2011) (citations and footnote omitted), *aff'd*, 698 F.3d 1374 (Fed. Cir. 2012).

## II. ARGUMENT

### A. Count I – § 1983.

Count I of Plaintiff's complaint asserted a cause of action under 42 U.S.C. § 1983. The third element for imposing § 1983 liability on a municipality is "that the policy or custom caused the violation," which means the policy or custom must be the moving force behind the injury. *McDowell v. Brown*, 392 F.3d 1283, 1289, 1292 (11th Cir. 2004). On that element, the Court wrote:

> Lee Memorial contends that the claim fails as a matter of law because Hechavarria's conduct was so obviously wrong that Lee Memorial's policies could not be the motivating factor behind the assault. Although Lee Memorial makes no attempt to attempt to explain its inaction when a patient reports a sexual assault, that inaction does not rise to the level of causing assaults. The Motion is granted as to this claim because Hammer fails to show that Lee Memorial's policies somehow caused Hechavarria's decision to assault her.

[Dkt. 127 at p. 4]. Plaintiff respectfully believes the above conclusion is clear error.

#### 1. *Relevant facts.*

In Count I, Ms. Hammer alleged that Lee Health deprived a constitutional right of Ms. Hammer by "allow[ing] a custom or practice to exist within [Lee Health] wherein [Hechavarria] utilized his authority without fear of investigation and without fear of disciplinary action for his misconduct." [Dkt. 25, ¶ 40].

3

The argument against Lee Health is as follows: its custom, practice, and/or policy of not supervising, controlling, and disciplining against sexual assaults created an environment whereby employees who were predisposed to committing sexual assaults, like Hechavarria, felt emboldened and were fearless of repercussions thereby allowing sexual assaults to occur. Mr. Hammer cited a long history of Lee Health employees sexually battering and assaulting patients without any repercussions whatsoever, as well as the fact that no affirmative actions were taken after any of those batteries and assaults to prevent future attacks.

Hechavarria's deposition testimony is clear that he was never counseled, supervised, trained, educated, or controlled by Lee Health in preventing sexual assaults. It should be no surprise that he felt emboldened to commit the sexual battery against Ms. Hammer—that sexual assault was proximately caused by the customs, practice, and/or policy of Lee Health. Hechavarria testified that Lee Health never told him not to engage in consensual or non-consensual sexual contact with patients. [Dkt. 82-17 at pp. 131-132:1-21]. It is clear that Lee Health did not provide Hechavarria adequate education and supervision with regard to the limited written policies that Lee Health had relevant to the issues in this case. He testified that he had no knowledge of Lee Health's policy regarding crisis leave during criminal investigations. [*Id.* at p. 159:14-19]. Lee Health had not informed him whether it had a policy to suspend employees if they were arrested. [*Id.* at p. 82:6-9]. Hechavarria did not recall Lee Health provided him a copy of its Sexual Abuse, Prevention and Reporting policy. [*Id.* at pp. 99-100:2-3]. Hechavarria did not recall Lee Health ever giving him the Violence in the Workplace policy and procedure. [*Id.* at pp. 100-101:11-1]. Lee Health never trained him on preventing sexual assaults from occurring. [*Id.* pp. 101-102:21-2]. Lee Health never trained him on preventing violence between Lee Health employees and

patients. [*Id.* at p. 102:3-9]. Even after Hechavarria assaulted Ms. Hammer, Lee Health still did not require him to review the internal sexual assault policies and procedures. [*Id.* at p. 115:15-24].

The culture and environment within Lee Health prior Ms. Hammer's sexual assault is clear: The security department took no action to prevent or deter future sexual assault after preceding sexual assaults that have been cited in the initial Response. Security Manager Steve Lucas testified that during month security meetings among the lead security mangers, the sexual assaults were never discussed, and no action was taken to prevent future sexual assaults. [Lucas at pp. 26-27:2-17]. In fact, Dr. Fred Hyde, one of Plaintiff's expert witnesses, has testified that: "What led to the sexual assault on Brianna Hammer is a combination of factors that I believe demonstrate callous indifference on the part of Lee Health in protecting the safety of vulnerable patients." [Dkt. 82-26 at p. 101:15-23]. Throughout his deposition, Dr. Hyde discussed that indifference, which is also explained in his expert report. [Dkt. 82-3].

### 2. Argument.

The Fourth Circuit explained the "moving force" causation standard as follows:

> A sufficiently close causal link between such a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom. Again, as in the case of deficient training policy, failure to correct the known practices must be such as to make the specific violation "almost bound to happen, sooner or later," rather than merely "likely to happen in the long run."

*Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987).

Lee Health's failure to adequately investigate reported sexual assaults on its patients by employees made Hechavarria's sexual assault of Plaintiff almost bound to happen, sooner or later. As the Court can see, many Lee Health employees pre-disposed to committing sexual assaults (like Hechavarria) eventually did so – the shear number of sexual assaults by Lee Health employees is dispositive.

The same is true of Lee Health's failure to adequately educate, train, and supervise its nurses with respect to inappropriate sexual conduct toward patients. Simply put, Lee Health's custom and policy of failing to do anything in response to its employees' sexual assaults on patients fostered a culture that was the moving force behind Hechavarria's violation of Plaintiff's constitutional rights. Employees like Hechavarria felt emboldened to commit their sexual assaults because there was no fear of in-depth investigation or discipline. This was evident to Hechavarria based on the clear lack of attention to sexual assault prevention education, training, and supervision, as well as the lack of policy information provided to him. In essence, no attention was placed on sexual assault prevention by Lee Health, which, in turn, led Hechavarria, and others like him, to believe that prevention of sexual assaults by Lee Health was unimportant.

The District Court of Massachusetts confronted a similar situation in *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279 (D. Mass. 2017). *Thomas* involved a school district with a win-at-all-costs attitude toward student athletics. A student athlete at one of its high schools was sexually assaulted by other student athletes, and his family reported the incident to law enforcement. *Id.* at 289-91. Following the incident, other high school students bullied and harassed the plaintiff. *Id.* at 291-92. Teachers and administrators at the school also engaged in extensive bullying and harassment of the plaintiff. *Id.* at 292-95. The plaintiff and his parents sued the local government asserting, among other things, that local government was liable under § 1983 for its employees' retaliation against the plaintiff for exercising his First Amendment rights.

In denying the government's motion to dismiss the *Monell* claim, the district court stated:

> The plaintiffs claim that Chelmsford schools had a custom of encouraging a win-at-all-costs sports culture that did not apply the same rules to star athletes, and that the municipality was aware of and perhaps even encouraged the culture. As a matter of formal policy, the [Chelmsford School Committee] did implement a Bullying Intervention Plan in 2010 and entered into a Memorandum of Understanding with the Chelmsford Police to work together to respond to bullying.

6

> The plaintiffs allege that in practice, though, CSC had a practice of not applying its bullying policies and looking the other way from sexual misconduct and sexual harassment by star athletes. The plaintiffs allege that this culture was the moving force behind the First Amendment retaliation against Matthew by his teachers. The plaintiffs adequately plead municipal liability for First Amendment retaliation based on the role that municipal policy or custom allegedly played in the constitutional violation.

*Id.* at 306.

Similarly, here, Lee Health's ingrained turn-a-blind-eye-to-sexual-assault attitude created a culture in which male nurses could commit sexual assaults on patients with impunity, whatever Lee Health's written policies said. [*See* Dkt. 84 at pp. 3-7 (detailing the sham investigations into eight employee-on-patient sexual assaults)]. This culture was the moving force behind Hechavarria's sexual assault of Hammer, just as in *Thomas*.

Another analogous case is *Releford v. City of Houston*, No. 4:14-CV-2810, 2016 WL 774552 (S.D. Tex. Feb. 29, 2016).[1] In *Releford*, a case arising from a fatal shooting by a police officer, the decedent's estate asserted that the city had a policy or custom of finding all intentional officer-involved shootings of people justified. *Id.* at *5. "By finding all shootings justified, no officers are disciplined for discharging their firearms, which," the estate argued, "creates a culture where officers use excessive deadly force with impunity." *Id.* The estate provided the factual details of five other such cases, text messages among officers after the at-issue shooting, and the opinion of an expert "criticizing the policy of finding all shootings to be justified." *Id.* at **6, 8. The district court found the evidence sufficient to avoid summary judgment. *Id.* at **7-8. Similarly, here, Lee Memorial dismissed almost all accusations of sexual assault, creating a culture

---

[1] *Motion to certify appeal denied*, No. 4:14-CV-02810, 2016 WL 7051662 (S.D. Tex. Dec. 5, 2016), *and appeal dismissed sub nom. Releford v. Rosemon*, 678 Fed. App'x 267 (5th Cir. 2017).

7

in which sexual assaults were prevalent. Plaintiff has presented evidence of those investigations and expert evidence criticizing them. [*See* Dkt. 84 at p. 7].

As Plaintiff stated in her summary-judgment response, Lee Health's argument that Hechavarria's conduct was so obviously wrong that its policies could not have been the moving force was misguided. Plaintiff pointed to the following passage in a decision cited by Lee Health:

> That said, the Court recognizes that a municipality's right to rely on the common sense of its police officers to refrain from perpetrating sex crimes on young girls is not unbounded, and that such reliance must give way where the municipality has "notice to the contrary." *Floyd* [*v. Waiters*], 133 F.3d [786,] 796 [(11th Cir.), *vacated on other grounds*, 525 U.S. 802 (1998)]; *see also Walker v. City of New York*, 974 F.2d 293, 300 (2nd Cir. 1992) ("While it is reasonable for city policymakers to assume their employees possess common sense, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so."); *Williams v. Enders*, 2010 WL 989978, *4 (M.D. Ga. Mar. 16, 2010) (opining that if municipality was aware of history of officers bartering arrests for sexual favors, then "the City may display deliberate indifference if it relied on the common sense of the members of the Police Department, rather than taking corrective measures").

*Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1315 (S.D. Ala. 2011), *aff'd*, 461 Fed. App'x 915 (11th Cir. 2012). Here, Lee Health certainly had notice—in the form of numerous sexual assaults—that it could not rely on its nurses' common sense. Yet it failed to take any action. And that inaction was the moving force behind Hechavarria's sexual assault of Hechavarria.

Because the term is not well defined, many Courts have described the "moving force" standard as an "affirmative link". *See Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1195 (11th Cir. 1994) ("…the Hills must "demonstrate some affirmative link between the policy and the particular constitutional violation alleged."); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 809 (1985) ("There must at the very least be an affirmative link between the municipality's policy and the particular constitutional violation alleged."); *see also Mahon v. City of Largo, Fla.*, 829 F.Supp. 377 (M.D. Fla. 1993) ("Plaintiff has failed to show an affirmative link between his arrest and any City policy or custom that deprives persons of their civil rights."); *see*

*Vance v. Miami-Dade County*, 2010 WL 2302313 ("At a minimum, a plaintiff must identify a municipal policy and then demonstrate an affirmative link between the policy and the particular violation alleged."). Respectfully, the Plaintiff believes that she has shown the "affirmative link" necessary to survive summary judgment on the 42 U.S.C. § 1983 claim.

Accordingly, the Court committed clear error when it determined that Lee Health's inaction did not proximately cause the sexual assault – especially when the Court must accept the facts in the light most favorable to the Plaintiff. Plaintiff respectfully asks the Court to reconsider its order granting Lee Health's motion for summary judgment as to Count I.

**B. Count III – Negligent hiring.**

***1. The Court misunderstood Florida law on sovereign immunity.***

In granting summary judgment on Count III, Plaintiff's claim against Lee Health for negligently hiring Hechavarria, the Court wrote:

> Lee Memorial contends that it is entitled to sovereign immunity on this claim, and that the Court cannot question its hiring practices. In Florida, government entities such as Lee Memorial are not liable in a negligence action regarding hiring policies, "no matter how ineffective the policies are alleged to be." *Hazleton v. City of Orlando*, No. 6:10CV342, 2011 WL 13175527, at *15 (M.D. Fla. Oct. 19, 2011). Hiring is a discretionary function, and a government entity is "immune from tort liability based on actions that involve its discretionary functions." *Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1117 (11th Cir. 2005).

[Dkt. 127 at p. 5]. The Court then concluded that "Lee Memorial followed its policy in hiring Hechavarria." [*Id.* at p. 6].

Florida law on sovereign immunity does not limit Lee Health's liability for hiring Hechavarria to negligent failure to follow its own policies or procedures.

In *Willis v. Dade County School Board*, 411 So. 2d 245, 246 (Fla. 3d DCA 1982), which Plaintiff cited in her summary-judgment response, the plaintiff sued the county school board for the negligent hiring or retention of a P.E. teacher who "maliciously assaulted and battered her

9

during regular school hours and caused her injury." The Third District Court of Appeal reversed the trial court's dismissal of that count:

> We find ... that the trial court erred in dismissing with prejudice Count III of the amended complaint on the sole ground that the doctrine of sovereign immunity bars a cause of action against the school board for the negligent hiring or retention of the teacher. We reject appellee's argument that the actual hiring of a teacher is a planning function for which the county is immune from suit, rather than an operational function for which the county may be subject to liability. *See, e.g.*, *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010 (Fla. 1979). Though the creation of a teaching position is a planning function, the actual filling of that position is operational. *Cf. Hollis v. School Board of Leon County*, 384 So. 2d 661 (Fla. 1st DCA 1980) (creation of plans to provide safe transportation was discretionary but implementation of plans was operational).

*Id.* (footnote omitted).

The present case does not involve the creation of a nursing position. The position already existed. The promulgation of policies to fill the extant nursing position is an implementation of the planning function of creating the position. Thus, this case is about "the actual hiring" of a nurse, just like *Willis* was about "the actual hiring of a teacher." The policies are, therefore, an operational function to which immunity does not attach.

Another Florida decision from thirty years ago supports this conclusion. In *School Board of Orange County v. Coffey*, the Fifth District Court of Appeal broadly and unequivocally held:

> The retention and supervision of a teacher by a school board are ***not acts covered with sovereign immunity***. The school board has a common law duty to protect others from the result of negligent hiring, supervision, or retention which duty is identical to the duty upon private employers who ***hire, retain, or supervise*** employees whose negligent or intentional acts in positions of employment can foreseeably cause injuries to third parties. *See Brantly v. Dade County School Board*, 493 So. 2d 471 (Fla. 3d DCA 1986); *Willis v. Dade County School Board*, 411 So. 2d 245 (Fla. 3d DCA), *rev. denied*, 418 So. 2d 1278 (Fla. 1982).

524 So. 2d 1052, 1053 (Fla. 5th DCA 1988) (emphasis added).

It is important that this case does not involve the hiring, firing, or retention of a local government's top executive, which would be a discretionary decision subject to immunity. *Cf.*

*Storm v. Town of Ponce Inlet*, 866 So. 2d 713, 719 (Fla. 5th DCA 2004) ("The decision of the governmental executive (Mayor, Town Council, Governor) or the legislative branch, to hire or fire a top head of an agency [there, the chief building official] is necessarily fundamental, and involves the exercise of governmental discretion at the highest level. It is the most upper level legislative or executive kind of decision." (footnote omitted)); *Citizens State Bank v. Dixie Cnty.*, No. 1:10-CV-00224-SPM, 2011 WL 1335805, at *10 (N.D. Fla. Apr. 7, 2011) (the county attorney).

The present case, instead, involves the hiring of a low-level nurse. There is no material difference between a teacher, as in *Willis* and *Coffey*, and a low-level nurse like Hechavarria.

The Court erred when it relied on *Hazleton v. City of Orlando*, No. 6:10CV342, 2011 WL 13175527 (M.D. Fla. Oct. 19, 2011), to conclude that Lee Health cannot be held liable for its hiring policies. *Hazleton* involved the hiring of a police officer—something far different than hiring a low-level nurse. Police officers are the means by which the people, through the government, protect the safety and security of themselves and their property. Police officers, indeed, hold the power of life and death. In that context, extraordinary deference is properly owed to the sovereign entity's hiring policies. But these same considerations are not present in the policies for hiring a low-level nurse.

To the extent *Hazleton*; and the case it relied on, *Cook v. Sheriff of Monroe County*, 402 F.3d 1092 (11th Cir. 2005); and the case *Cook* relied on, *Lewis v. City of St. Petersburg*, 260 F.3d 1260 (11th Cir. 2001), can be read to broadly immunize a sovereign entity's hiring policies for any employee, no matter what kind, the federal courts have misinterpreted Florida law. If that is the case, the decisions were wrongly decided and should not be applied. It is noteworthy that neither *Hazleton*, *Cook*, nor *Lewis* have been cited by any Florida state court for such a proposition.

The Court committed clear error when it concluded that Lee Health can be held liable only for its negligent failure to follow its hiring policies, as opposed to the policies themselves. Plaintiff presented evidence that Lee Health was negligent in hiring Hechavarria, which was sufficient to avoid summary judgment. [*See* Dkt. 84 at pp. 11-12, ¶¶ 35-37; pp. 19-20; pp. 22-23].

Specifically, Lee Health failed to follow its own hiring policy in hiring Hechavarria (explained in the next section), and failed to follow the guidelines by the regulatory board (DNV GL Healthcare) that oversaw its accreditation. Not only did Lee Health fail to acquire and review Hechavarria's DD214 Form, but it failed to contact past employers for references and background information on Hechavarria. *See* Hiring Policy. [Dkt. 98-1]; Hyde Dep. [Dkt. 82-26]; Hyde Report [Dkt. 82-3 at p. 8]. In addition to failing to follow its own policy in the hiring of Hechavarria, Lee Health failed to follow the guidelines and policies of its accreditation agency DNV GL Healthcare. *See* Hyde Report [Dkt. 82-3 at p. 6]. Lee Health was required to follow the DNV GL Healthcare guidelines and policies as if they were its own guidelines and policies. Of course, Lee Health failed to do that here.

Accordingly, Plaintiff respectfully asks that the Court reconsider its order granting Lee Health's motion for summary judgment as to Count III.

### 2. *Alternatively, Plaintiff presented evidence creating a disputed issue of material fact on whether Lee Health failed to follow its hiring policies.*

Even if sovereign immunity did limit liability to negligent failure to follow one's own policies and procedures, the Court misunderstood the facts in a way material to the outcome. The Court said in the order: "Lee Memorial followed its policy in hiring Hechavarria. ... Also, because Hechavarria received a general, not dishonorable, discharge from the military, Lee Memorial's policy did not require further investigation into Hechavarria's background." [Dkt. at p. 6].

Hechavarria marked on his job application that his Navy discharge was "general." [Rigot Dep., Ex. 3 at p. 5]. However, while Hechavarria's DD214 form states the discharge was honorable, it also states Hechavarria left the military because of "MISCONDUCT (SERIOUS OFFENSE)":



[Rigot Dep., Ex. 6].

The relevant hospital employee, Kristy Rigot, offered extensive and mealy-mouthed testimony on what Lee Health's hiring policies required under these circumstances. However, Ms. Rigot did testify that, if Hechavarria had written what was in box 28 on his job application, "that would have been looked into, which it was not." [Rigot Dep. at p. 147:14-21].[2] Later, she testified, "If the discharge had not been general, it said dishonorable or—you know, ***or bad conduct***, I think, is another thing it could say, it would have been—they would have asked." [*Id.* at p. 150:2-5 (emphasis added)]. Though the point is disputed, Hechavarria testified he provided the DD214— with its "MISCONDUCT (SERIOUS OFFENSE)"—to Lee Health during the hiring process. [Hechavarria Dep. at p. 69:15-21].

Accordingly, at the least, there is a disputed issue of material fact whether Lee Health failed to follow its own policies when it hired Hechavarria. Plaintiff respectfully submits that the Court

---

[2] [*See also* Rigot Dep. at p. 148:7-13 ("Q. When you say if it was on the application it would have been looked at, what do you mean? A. The recruiter would have likely asked them to explain that. That was not. Q. That was not done? A. That was not on the application. So yes, it [was] not done."), *id.* at p. 149:3-5 ("Q. Well, and to be fair, though, there was a section about misconduct. A. Yes. I do recall.")].

committed clear error in concluding otherwise and asks that the Court reconsider its order granting Lee Health's motion for summary judgment as to Count III.

### C. Count IV – Negligent security.

#### 1. Relevant procedural facts.

Plaintiff styled the cause of action in Count IV as "negligent security." [Dkt. 25 at p. 15]. In that count, Plaintiff alleged that Lee Health "owed a duty of care to its invitees, patrons, employees, executives, and anyone on the premises to provide adequate security measures able to protect against reasonably foreseeable acts of criminal violence." [*Id.* at p. 15, ¶ 71]. More particularly, Plaintiff alleged foreseeability on the basis Lee Health knew or should have known of the dangerous propensity of Hechavarria specifically. [*Id.* at pp. 15-16, ¶ 72].

Plaintiff styled the cause of action in Count V as "negligence." [*Id.* at p. 18]. Instead of focusing specifically on Hechavarria, Count V premised foreseeability on prior similar incidents:

> 78. At all times material hereto LEE MEMORIAL HEALTH SYSTEM, as the owner and/or operator of CAPE CORAL HOSPITAL, owed a duty of care to its business invitees, specifically including the Plaintiff, to protect them and her against reasonably foreseeable criminal acts committed by their employees and/or third parties occurring on its property.
>
> 79. At all times material hereto, prior to the sexual assault that is the subject of this action, other incidents of unwarranted, inappropriate, and improper sexual assaults, sexual violence, and physical violence had occurred which were perpetrated by male staff members and/or male employees so that such conduct was sufficiently well known and occurred with sufficient frequency so that the LEE MEMORIAL HOSPITAL knew and/or should have known of this at the time the Plaintiff was a patient, and therefore owed her a duty of care to protect her from such assaults and should have taken steps and actions to prevent it from occurring.

[*Id.*]

Lee Health moved to dismiss Counts IV and V. [*See* Dkt. 27]. One of the arguments it made against Count V was that the count was "completely superfluous" to other counts such as Count IV. [*Id.* at p. 13]. The Court agreed and dismissed Count V. It wrote that,

> …although Count V is framed as an ordinary negligence claim, it mirrors the allegations in Plaintiff's negligent security claim in Count IV. Specifically, in both Counts IV and V, Plaintiff alleges (1) that Lee Memorial owed Plaintiff a duty to protect her from reasonably foreseeable criminal acts; (2) that Lee Memorial breached its duty by failing to take adequate steps to protect her from Hechavarria; and (3) Lee Memorial's breach resulted in Hechavarria's alleged sexual assault on Plaintiff. Because Count V simply re-alleges the same claim as Count IV, the Court dismisses without prejudice Count V as a duplicative Count.

[Dkt. 31 at p. 13].

In its motion for summary judgment, Lee Health argued it was entitled to summary judgment on Count IV because, among other things, Plaintiff failed to adequately allege that Lee Health knew or should have known of Hechavarria's dangerous propensity. [*See* Dkt. 70 at p. 23]. Lee Health asserted that Plaintiff's "complaint clearly defines the scope of her claim—she does not assert that the risk was of assaults generally, but rather assaults specifically 'by JEOVANNI HECHAVARRIA....'" [*Id.* (quoting Dkt. 25 at pp. 15-16, ¶¶ 72-73)].

As Plaintiff pointed out in her summary-judgment response, the above was an incorrect understanding of the procedural posture in light of the Court's earlier dismissal order. [*See* Dkt. 84 at p. 25]. Plaintiff noted that "[t]his Court's Order on the Motion to Dismiss ruled that the negligent security and the negligence counts were the same cause of action." [*Id.* at p. 25 n.11]. In reply, Lee Health argued that Plaintiff could not rely on the allegations of Count V because it had been dismissed. [*See* Dkt. 95 at p. 5].

In granting summary judgment on Count IV, the Court appears to have agreed with Lee Health's argument.

### 2. *Argument.*

This Court clearly ruled that Plaintiff's Counts IV and V were duplicative. That necessarily meant that, in the Court's view, Count IV also alleged foreseeability based on prior similar incidents, so that Count IV alleged two grounds of foreseeability: 1) Hechavarria's dangerous

15

propensity and 2) prior similar incidents. These are two separate, legally recognized grounds of foreseeability in negligent-security cases. *See* Thomas D. Sawaya, *Florida Personal Injury & Wrongful Death Actions* § 10:8 (2019-2020 ed.).

Plaintiff relied on the Court's order of dismissal that concluded Count IV alleged both grounds. Her opposition to Lee Health's motion as to Count IV was based on the second ground, and Plaintiff presented evidence that created disputed issues of material fact. [*See* Dkt. 4 at pp. 3-7, 25]. Plaintiff was entitled to rely on the Court's order. *See, e.g.*, *Berkovitz v. Home Box Office Inc.*, 89 F.3d 24, 30 (1st Cir. 1996) ("When a court charts a procedural route, lawyers and litigants are entitled to rely on it. A court cannot alter its bearings mid-course without signalling the impending change to the parties." (citations omitted)).

The foreseeability of Hechavarria's attack on Ms. Hammer is addressed in detail by Michael D'Angelo, an expert in hospital security. His expert report addresses the foreseeability of the sexual assault based on the number of prior sexual assaults within the Lee Health hospital system. More so, even if Count IV were limited to Hechavarria's propensity, D'Angelo provided evidence on that too, setting out four separate facts which establish the foreseeability as to Hechavarria specifically. [Dkt. 82-5, page 10-11]. Hechavarria had three domestic violence injunctions entered against him from 1999-2015, and he was discharged from the military for serious misconduct. In fact, this Court had already stated that the Plaintiff "plausibly stated that Hechavarria's alleged sexual assault reasonably could have been foreseen in light of his alleged history of domestic violence" when it denied Lee Health's Motion to Dismiss. [Dkt. 31, page 12].

The Court committed clear error when it disregarded its earlier order of dismissal as to Count V, and limited Plaintiff's theory of foreseeability in Count IV to Hechavarria's dangerous

16

propensity. Accordingly, Plaintiff respectfully asks the Court to reconsider its order granting Lee Health's motion for summary judgment as to Count IV.

## III. CONCLUSION

For the above reasons, Plaintiff respectfully asks that the Court reconsider the order granting Lee Health's motion for summary judgment on Count I (§ 1983), Count III (negligent hiring), and Count IV (negligent security).

Respectfully submitted,

**HALBERG & FOGG, PLLC.**
Barristers Building
1615 Forum Place, Suite 3-B
West Palm Beach, FL 33401
PH: (561) 616-3000
FAX: (561) 688-0775
service@halberglaw.com

*/s/ Ryan A. Fogg*
BY:_____
RYAN A. FOGG (68773)

## CERTIFICATE OF SERVICE

I certify that on March 17, 2020, I electronically served this Motion for Reconsideration upon the following:

Angelique Groza Lyons, Esq.
Constangy, Brooks, Smith, et al.
100 North Tampa Street, Suite 3350
Post Office Box 1840
Tampa, Florida 33601-1840
ALyons@constangy.com;
Tampa@constangy.com

Robert C. Shearman, Esq.
Kyle C. Dudek, Esq.
Henderson, Franklin, Starnes & Holt, P.A.
Attorneys for Defendant Jeovanni Hechavarria
1715 Monroe Street
Fort Myers, FL 33901

Mark Haskins, Esq,
Mark Haskins, P.A.
Co-Counsel for Lee Memorial Health Systems
2801 Fruitville Rd., Suite 230
Sarasota, FL 34237
mark@markhaskinspa.com
chris@markhaskins.com

Allison Wiggins, Esquire
Littler Mendelson, P.C.
Attorneys for Defendant Jeovanni Hechavarria

| | |
|---|---|
| Robert.Shearman@henlaw.com<br>Kyle.Dudek@henlaw.com<br>Courtney.Ward@henlaw.com | 111 North Orange Avenue, Suite 1750<br>Orlando, Florida 32801-2366<br>Telephone: 407.393.2900<br>Facsimile:  407.393.2929<br>Email primary addresses:<br>awiggins@littler.com<br>Email secondary addresses:<br>vking@littler.com<br>ssarber@littler.com;<br>mfilmore@littler.com |